UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RUDELLE BRATHWAITE,                          :

                                             :

               Plaintiff,                    :          22 Civ. 4929 (DEH) (GWG)

                                             :
     -against-                                          AMENDED REPORT AND
                                             :          RECOMMENDATION

MARTINI COLLECTIONS INC. et al.,             :

                                             :

               Defendant**s**.               :
------------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

        Plaintiff Rudelle Brathwaite ("Brathwaite") brought this action against defendants

Martini Collections Inc. ("Martini Collections"), Martini Collections #1 Inc. ("Martini #1"), and

Daoud Alchkifati a/k/a "David" (together, "defendants") for violations of the Fair Labor

Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the New York Labor Law §§ 190 et seq.

("NYLL").  See Complaint, filed June 13, 2022 (Docket # 1) ("Compl.").  The Court has entered

a default against defendants.  See Order, signed Sept. 12, 2024 (Docket # 79) ("Default Order").

Brathwaite now seeks damages pursuant to the default.[1]  For the following reasons, Brathwaite

should be awarded a judgment of $72,222.04 plus prejudgment interest.[2]

---

[1]  See Notice of Motion, filed August 8, 2024 (Docket # 74) ("Mot."); Proposed Findings of Fact and Conclusions of Law, filed October 7, 2024 (Docket # 82) ("PFFCL"); Declaration of Eliseo Cabrera, filed October 7, 2024 (Docket # 83) ("Cabrera Decl."); Declaration of Rudelle Brathwaite, filed October 7, 2024 (Docket # 84) ("Brathwaite Decl.").

[2]  This Report and Recommendation amends and supersedes a previous Report and Recommendation issued in this case.  See Brathwaite v. Martini Collections Inc., 2024 WL 4942355 (S.D.N.Y. Dec. 3, 2024).  The changes result from our re-calculation of Brathwaite's hourly rate of pay.  The superseded Report and Recommendation calculated Brathwaite's hourly

I. <u>BACKGROUND</u>

    A.    <u>Procedural History</u>

Brathwaite filed this action on June 13, 2022.  <u>See</u> Compl.  Defendants Martini

Collections and Martini #1 were served on June 29, 2022, and the proof of service for each was

filed on July 6, 2022.  <u>See</u> Affidavit of Service, filed July 6, 2022 (Docket # 10); Affidavit of

Service, filed July 6, 2022 (Docket # 11).  Defendant Alchkifati was served on July 5, 2022, and

the proof of service was filed on August 24, 2022.  <u>See</u> Affidavit of Service, filed August 24,

2022 (Docket # 12).  Brathwaite obtained certificates of default as to all three defendants.  <u>See</u>

Clerk's Certificate of Default, filed August 29, 2022 (Docket # 18); <u>see</u> Clerk's Certificate of

Default, filed August 29, 2022 (Docket # 19); <u>see</u> Clerk's Certificate of Default, filed August 29,

2022 (Docket # 20).

    On October 19, 2022, the defendants filed an answer, <u>see</u> Answer, filed October 19, 2022

(Docket # 35), and the case proceeded to be litigated.  Eventually, the district court struck

defendants' answer as a sanction for failure to comply with discovery obligations.  <u>See</u> Opinion

and Order, filed July 1, 2024 (Docket # 65).  Brathwaite then obtained a second certificate of

default as to defendant Alchkifati.  <u>See</u> Clerk's Certificate of Default, filed July 18, 2024

(Docket # 73).

    Shortly thereafter, Brathwaite filed a motion for a default judgment as to all defendants.

<u>See</u> Mot.  On September 12, 2024, the district judge ordered that judgment be entered in favor of

Brathwaite and against all defendants, <u>see</u> Default Judgment, filed September 13, 2024 (Docket #

---

rate of pay based on a regulation that governs employees working in the hospitality industry.
<u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b).  However, because Brathwaite worked in
a clothing store, that regulation does not apply to this case.  <u>See</u> Compl. ¶ 10 ("Defendants
operated as a single store selling women's clothing and other fashion merchandise."); <u>id.</u> ¶ 21
("Plaintiff worked for Defendants as a sales associate.").

79), and referred the matter to the undersigned for an inquest, <u>see</u> Order of Reference, filed

September 13, 2024 (Docket # 80).  The undersigned issued an order directing Brathwaite to file

proposed findings of fact and conclusions of law, <u>see</u> Scheduling Order for Damages Inquest,

filed September 16, 2024 (Docket # 81) ("Scheduling Order"), which Brathwaite filed on

October 7, 2024, <u>see</u> PFFCL.  The order directed the defendants to respond by October 28, 2024,

<u>see</u> Scheduling Order, ¶ 2, but defendants have filed no response.

       B.    <u>Factual Background</u>

      Defendant Alchkifati is the "member, manager, owner, and/or person in control of

Martini Collections and Martini #1," which "operated as a single store selling women's clothing

and other fashion merchandise."  Compl. ¶¶ 10, 12.  Brathwaite worked for defendants "as a

sales associate from in or around 2005 until on or around March 2020."  <u>Id.</u> ¶ 21.  Defendants

"were responsible for setting Plaintiff's schedules, determining her day-to-day activities, . . .

supervising her performance" and "had the power to discipline and terminate" her.  <u>Id.</u> ¶¶ 13, 14.

      Up until March 2020, defendants "did not track or otherwise record the hours" worked by

Brathwaite.  <u>Id.</u> ¶ 26.  Brathwaite states that "[f]rom the start of her employment until in or [sic]

December 2015, Plaintiff regularly worked six (6) days per week . . . for a total of . . . sixty-one

(61) hours per week."  <u>Id.</u> ¶ 23.  Then, "[f]rom in or around January 2016 until the end of her

employment, for approximately half of each year Plaintiff worked five (5) days per week . . . for

a total of approximately forty (40) hours worked per week" and "from April through July, and

September through October, Plaintiff regularly worked six (6) days per week . . . for a total of

. . . forty-eight (48) hours worked per week."  <u>Id.</u> ¶¶ 24-25.  Throughout this employment,

"Plaintiff was not afforded meal or rest breaks during her shift."  <u>Id.</u> ¶ 27.

      "From in or around March 2011 until in or around December 31, 2016, Defendants

compensated Plaintiff at a fixed daily rate of $80.00 per day for all hours worked per week, including all hours worked in excess of forty (40) per week."  Id. ¶ 28.  "From in or around January 1, 2017 until [i]n or around March 2020, Defendants compensated Plaintiff at a fixed daily rate of $110.00 per day for all hours worked each week, including all hours worked in excess of forty (40) per week."  Id. ¶ 29.

"Although Plaintiff regularly worked more than forty (40) hours per week during her employment with Defendants, Defendants failed to compensate Plaintiff with the proper minimum wages for all hours worked and overtime wages . . . for every hour worked in excess of forty (40) per week."  Id. ¶ 31.  Additionally, defendants "also failed to furnish Plaintiff with . . . payroll notice[s]" or wage statements.  Id. ¶ 32-33.

## II.  LEGAL STANDARD

In light of defendants' default, the complaint's properly pleaded allegations, except those related to damages, are accepted as true.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.") (citation and punctuation omitted); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor.").

As to damages, "[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  This inquiry requires the district court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting the damages to be determined under this rule."  Id.

4

The plaintiff bears the burden of establishing her entitlement to the amount sought and "[t]he evidence the plaintiff submits must be admissible."  Burns v. Scott, 635 F. Supp. 3d 258, 272 (S.D.N.Y. 2022).  "If the documents the plaintiff has submitted provide a 'sufficient basis from which to evaluate the fairness of' the requested damages, the Court need not conduct an evidentiary hearing."  Id. (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

Here, the Scheduling Order notified the parties that the Court might conduct the inquest into damages based solely upon the written submissions of the parties, but that a party might seek an evidentiary hearing.  See Scheduling Order ¶ 3.  Neither Brathwaite nor defendants have requested an evidentiary hearing.  Brathwaite has proffered evidence of the hours she worked and the wages she received in the form of a sworn declarations.  See Cabrera Decl.  Brathwaite's sworn statements as to hours she worked and the wages she was paid "are presumed to be correct in the absence of any rebuttal evidence proffered by Defendants."  Rios v. Neighborhood Constr. Corp., 2009 WL 3335354, at *1 (S.D.N.Y. Oct. 14, 2009) (citation omitted).  Because Brathwaite's submissions provide a sufficient basis for an award of damages, no hearing is required.

## III.  DISCUSSION

Brathwaite brought suit under both the NYLL and the FLSA.  It is settled that while

a plaintiff may be entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.  Instead, where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages.

Ergin v. 8th Hill Inc., 2022 WL 1037655, at *3 (S.D.N.Y. Apr. 6, 2022) (citation omitted), adopted by 2022 WL 1256996 (S.D.N.Y. Apr. 26, 2022).  Because the NYLL provides for the

greater recovery in Brathwaite's case, it is not necessary to address any provisions of the FLSA.

See Caputi-Richards v. Chuck's Vintage, Inc., 2023 WL 2877622, at *2 (S.D.N.Y. Apr. 11,

2023), adopted by 2023 WL 3174316 (S.D.N.Y. May 1, 2023).

    A.  Unpaid Minimum Wage

    Brathwaite alleges minimum wage violations under the NYLL.  See Compl. ¶¶ 49-54.

Brathwaite has failed to plead or otherwise submit evidence addressing whether defendants had

eleven or more employees such that they could be considered a "large employer."  N.Y. Lab.

Law § 652(1)(a)(i).  Accordingly, Brathwaite should be compensated at the rate for small

employers in New York City.  See N.Y. Lab. Law § 652(1)(a)(ii); Anzurez v. La Unica Caridad

Inc., 2021 WL 2909521, at *4 (S.D.N.Y. July 12, 2021); Maria v. Rouge Tomate Chelsea LLC,

2020 WL 6049893, at *4 (S.D.N.Y. Oct. 14, 2020), adopted by 2021 WL 734958 (S.D.N.Y. Feb.

25, 2021).  This rate was "$8.00 on and after December 31, 2013, $8.75 on and after December

31, 2014, $9.00 on and after December 31, 2015, and until December 31, 2016," N.Y. Lab. Law

§ 652(1), "$10.50 per hour on and after December 31, 2016, $12.00 per hour on and after

December 31, 2017, $13.50 per hour on and after December 31, 2018, [and] $15.00 per hour on

and after December 31, 2019," N.Y. Lab. Law § 652(1)(a)(ii).

    Brathwaite was paid daily, rather than hourly.  See Compl. ¶¶ 28-29; Cabrera Decl. ¶¶ 22,

28, 34; Brathwaite Decl. ¶ 26-27.  "Under both federal and New York law, when an employee is

paid a flat, daily rate irrespective of the number of hours actually worked, that employee's

regular rate is computed by 'totaling all the sums received at such day rates . . . in the workweek

and dividing by the total hours actually worked.'"  Blanco v. M&R Plaza Deli Inc., 2024 WL

4859467, at *5 (E.D.N.Y. Oct. 29, 2024) (citing 29 C.F.R. § 778.112), adopted, 2024 WL

4855214 (E.D.N.Y. Nov. 21, 2024); accord N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16

("When an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings."); Bemejo v. Shaker Contractors, Corp., 2022 WL 17251667, at *3 (S.D.N.Y. Nov. 28, 2022) (In the context of plaintiffs who were each paid a daily rate, the court, surveying the law, concluded that "[u]nder both federal and state law, Plaintiffs' regular rate of pay is their weekly compensation divided by their weekly hours worked.").[3]

From November 2, 2014, the earliest date for which Brathwaite requests damages, to December 31, 2015, Brathwaite worked 6 days a week, earning $80.00 each day. Compl. ¶¶ 23, 28; Brathwaite Decl. ¶ 26. Thus, her weekly wage during this time period amounts to $480.00 (6 * $80.00 = $480.00). During this time, Brathwaite worked 61 hours a week. Compl. ¶ 23; Brathwaite Decl. ¶ 20. Thus, her hourly rate is $480.00 divided by 61. See N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16. This rate is $7.87 per hour ($480.00/61 hours = $7.87/hour), which is below the applicable minimum wage of $8.00 for the period of December 31, 2013, to December 30, 2014, the applicable minimum wage of $8.75 for the period of December 31, 2014, to December 30, 2015, and the applicable minimum wage of $9.00 for December 31, 2015. See N.Y. Lab. Law § 652(1). Accordingly, Brathwaite should be awarded $63.44 ([$8.00 – $7.87] * 61 hours * 8 weeks = $63.44) for unpaid minimum wages during the time period of November 2, 2014, to December 30, 2014, $2,791.36 ([$8.75 – $7.87] * 61 hours * 52 weeks = $2,791.36) for unpaid minimum wages during the time period of December 31, 2014, to

---

[3] Under the NYLL, however, this rule does not apply to employees working in the hospitality industry. See N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b).

December 30, 2015, and $9.85 ([$9.00 – $7.87] * 61 hours * 1/7 weeks = $9.85) for unpaid minimum wages for December 31, 2015.

For the time period of January 1, 2016, to December 30, 2019, Brathwaite alleges that minimum wage or overtime rate violations occurred during only 26 weeks of each year — the weeks in which Brathwaite worked more than 40 hours.  See Exhibit 1, annexed as Ex. 1 to Cabrera Decl. (Docket #83-1) ("Damages Chart").  During each of these 26 weeks, Brathwaite worked 6 days a week, earning $110.00 each day.  Compl. ¶¶ 25, 29; Brathwaite Decl. ¶¶ 23, 27.  Thus, her weekly wage during this time period amounts to $660.00 (6 * $110.00 = $660.00).  During this time, Brathwaite worked 48 hours a week.  Compl. ¶ 25; Brathwaite Decl. ¶ 23.  Thus, her hourly rate amounts to $660.00 divided by 48.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16.  This rate is $13.75 per hour ($660.00/48 hours = $13.75/hour).  $13.75 per hour is more than the applicable minimum wage.  See N.Y. Lab. Law § 652(1); see § 652(1)(a)(ii).  Because the rate of pay for this time period was more than the applicable minimum wage, Brathwaite was sufficiently paid for her non-overtime hours for the period of January 1, 2016, to December 30, 2019, and is not entitled to any unpaid minimum wage damages.

From January 1, 2020, to March 15, 2020, Brathwaite worked 5 days a week, earning $110.00 each day.  Compl. ¶¶ 24, 29; Brathwaite Decl. ¶ 27.  Thus, her weekly wage during this time period was $550.00 (5 * $110 = $550.00).  During this time, Brathwaite worked 40 hours a week.  Compl. ¶ 24.  Thus, her hourly rate was $13.75 ($550.00/40 hours = $13.75/hour), which is below the applicable minimum wage of $15.00 for the period of December 31, 2019, to March 15, 2020.  See N.Y. Lab. Law § 652(1)(a)(ii).  Accordingly, Brathwaite should be awarded

$550.00 ([$15.00 – $13.75] * 40 hours * 11 weeks = $550.00) for unpaid minimum wages during the time period of December 31, 2019, to March 15, 2020.

In sum, Brathwaite is entitled to $3,414.65 ($63.44 + $2,791.36 + $9.85 + $550.00 = $3,414.65) for unpaid minimum wages.

B.  Unpaid Overtime Wages

Brathwaite alleges overtime violations under the NYLL.  See Compl. ¶¶ 42-48.

The NYLL requires that an employee be paid an overtime rate not less than one-and-a-half times his or her regular rate for hours worked in excess of 40 hours per work week.  See N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.  Where the employee has been paid below the minimum wage, "the appropriate overtime rate [is] one-and-a-half times the minimum wage rate."  Nana v. Le Viking LLC, 2019 WL 3244181, at *3 (S.D.N.Y. July 19, 2019).  However, where the employee is paid at or above the applicable minimum wage, the appropriate overtime rate is one-and-a-half times the employee's regular rate.  See, e.g., Ramos v. Guaba Deli Grocery Corp., 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 29, 2021).  As already noted, in instances where an employee is paid weekly rather than hourly, we compute the employee's "regular rate" by using the formula in N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16.

From November 2, 2014, to December 31, 2015, Brathwaite worked 61 hours a week. Compl. ¶ 23; Brathwaite Decl. ¶ 20.  During this time period, Brathwaite's regular rate of $7.87 was less than the applicable minimum wage.  See N.Y. Lab. Law § 652(1).  Thus, the applicable minimum wage is used to calculate the total overtime pay for this time period.

For the time period of November 2, 2014, to December 30, 2014, Brathwaite worked a total of 168 overtime hours ([61 hours – 40 hours] * 8 weeks = 168 hours) for which she was insufficiently compensated.  During this time period, the minimum wage was $8.00 per hour,

which corresponds to an overtime rate of $12.00. N.Y. Lab. Law § 652(1). Accordingly, for this time period, Brathwaite is entitled to $672.00 ([$12/hour – $8/hour] * 168 hours = $672.00).

For the time period of December 31, 2014, to December 30, 2015, Brathwaite worked a total of 1092 overtime hours ([61 hours – 40 hours] * 52 weeks = 1092 hours) for which she was insufficiently compensated. During this time period, the minimum wage was $8.75 per hour, which corresponds to an overtime rate of $13.13. N.Y. Lab. Law § 652(1). Accordingly, for this time period, Brathwaite is entitled to $4,782.96 ([$13.13/hour – $8.75/hour] * 1092 hours = $4,782.96).

For the day of December 31, 2015, Brathwaite worked a total of 3 overtime hours ([61 hours – 40 hours] * 1/7 weeks = 3 hours) for which she was insufficiently compensated. During this time period, the minimum wage was $9.00 per hour, which corresponds to an overtime rate of $13.50. N.Y. Lab. Law § 652(1). Accordingly, for this time period, Brathwaite is entitled to $13.50 ([$13.50/hour – $9/hour] * 3 hours = $13.50.

From January 1, 2016, to December 31, 2019, during 26 weeks of each year (totaling 104 weeks), Brathwaite worked 48 hours a week. Compl. ¶ 25; Brathwaite Decl. ¶ 23. Thus, in that time period, Brathwaite worked 832 overtime hours ([48 hours – 40 hours] * 104 weeks = 832 hours). Brathwaite's regular rate of $13.75 per hour (which corresponds to a $20.63 overtime rate) was more than the applicable minimum wage. See N.Y. Lab. Law § 652(1)(a)(ii). Thus, Brathwaite's regular rate is used to calculate the total overtime pay which she is owed. Accordingly, for this time period, Brathwaite is entitled to $5,724.16 ([$20.63/hour – $13.75/hour] * 832 hours = $5,724.16).

In sum, Brathwaite is entitled to $11,192.62 ($672.00 + $4,782.96 + $13.50 + $5,724.16 = $11,192.62) in unpaid overtime.

C.  Payroll Notice and Wage Statement Violations

Brathwaite alleges that defendants failed to provide payroll notices and wage statements under the NYLL. See Compl. ¶¶ 63-70.

N.Y. Lab. Law § 195(1) requires an employer at the time of hiring to "provide his or her employees, in writing in English and in the language identified by each employee as [their] primary language," notice of

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

Id. § 195(1)(a); accord Maria, 2020 WL 6049893, at *5-6. The notice must also state an employee's regular hourly rate and overtime rate of pay. N.Y. Lab. Law § 195(1)(a). The

statutory damages for violating the notice requirement are $50 per workday for a maximum of $5,000.00.  N.Y. Lab. Law § 198(1-b).

A separate statute requires employers to "furnish each employee with a statement with every payment of wages," which must include, inter alia, the rate of payment, the gross wages provided, and the applicable overtime rate.  N.Y. Lab. Law § 195(3).  The statute provides for a penalty of $250 for each workday that the violations occurred, not to exceed $5,000.00.  See N.Y. Lab. Law § 198(1-d).

While Brathwaite seeks damages as provided in the NYLL because her employer failed to provide these notices, Brathwaite lacks standing under Article III of the U.S. Constitution to bring these claims.

Article III of the U.S. Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'  For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case — in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citation and punctuation omitted).  To establish standing, the party invoking federal jurisdiction "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  As the party invoking federal jurisdiction, Brathwaite "bears the burden of establishing these elements."  Lujan, 504 U.S. at 561.  "[E]ach element [of Article III standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 309 (2d Cir. 2024).

For a harm to be sufficiently concrete to establish Article III standing, "the alleged injury to the plaintiff [must have] a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." TransUnion LLC, 594 U.S. at 424 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016)). In TransUnion LLC, the Supreme Court emphasized that while a legislature may "elevate harms that 'exist' in the real world, . . . it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." Id. at 426 (quoting Hagy v. Demers & Adams, 882 F.3d 616, 622 (6th Cir. 2018)). Thus, the "creation of a statutory prohibition or obligation and a cause of action [by a legislature] does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." Id. Further, TransUnion LLC found that a "bare procedural violation, divorced from any concrete harm" did not suffice for Article III standing. Id. at 440 (quoting Spokeo, Inc., 578 U.S. at 341).

Following the Supreme Court's decision in TransUnion LLC, the Second Circuit has emphasized that "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself." Guthrie, 113 F.4th at 306 (emphasis in original) (quoting Harty v. W. Point Realty, Inc., 28 F.4th 435, 443 (2d Cir. 2022)). Furthermore, "an 'informational injury' without a concrete downstream injury-in-fact does not establish standing to maintain a claim under § 195." Id. at 307. Alleging a downstream injury-in-fact that is sufficiently concrete as to establish standing under Article III is not enough, however. In the case of violations for failure to provide statutorily required notices, there must also be "some causal connection between the lack of accurate notices and the downstream harm." Id. at 308.

Applying these principles, Guthrie held that "allegations amounting only to a technical

violation of § 195 of the New York Labor Law — without a resulting concrete injury — fail to establish Article III standing to pursue a claim for damages based on the violation." Id. at 306. Thus, while a "plaintiff-employee may have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion . . . the plaintiff-employee cannot 'assume[ ] [t]his conclusion without analysis' or rely on 'speculation and conjecture.'" Id. at 309 (modifications in original) (quoting Quieju v. La Jugueria Inc., 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)). Instead, the "plaintiff-employee must support a plausible 'theory as to how he was injured by [the] defendants' failure to provide the required documents." Id. (modifications in original) (quoting Quieju, 2023 WL 3073518, at *2). "[A] plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has such a concrete interest and is not simply policing legal infractions in the abstract." Id. at 310.

Here, the complaint does not allege a concrete downstream consequence of the failure to receive payroll notices or wage statements. See Compl. ¶¶ 63-70. Thus, the complaint does not show that the Court has subject matter jurisdiction over these claims.

In her declaration, Brathwaite proffers some additional information. She asserts that "by failing to provide [her] with payroll notices and wage statements Defendants deprived [her] of [her] statutory right to be provided with complete and accurate information about the terms and conditions of [her] compensation." Brathwaite Decl. ¶ 38. Further, Brathwaite alleges that the "failure to provide [her] with such information caused [her] to endure uncertainty regarding [her] wages and hindered [her] ability to take action to correct Defendants' wage and hour violations." Id. ¶ 39. She also asserts that had she been provided with the information, she "would have addressed the issue with Defendants in order to be timely paid [her] correct wages." Id. ¶ 40.

We will assume, without deciding, that Brathwaite could cure the defective allegations in her complaint by asserting legally cognizable harm in a declaration submitted as part of an inquest or that we would permit amendment of the complaint at this juncture to include the new allegations of harm.  Even so, her assertions fail.  While some "intangible harms can . . . be concrete," these are mainly "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  TransUnion LLC, 594 U.S. at 425.  Thus, although uncertainty surrounding the terms and conditions of employment can certainly cause distress, it is not an injury with a close relationship to a harm traditionally recognized as providing a basis for a lawsuit.  See id. (listing "reputational harms, disclosure of private information, and intrusion upon seclusion" as intangible harms with a sufficiently close relationship to harms traditionally recognized as providing a basis for lawsuit in American courts).  Accordingly, courts in this Circuit have held that "confusion and uncertainty about" financial matters is only a "hypothetical, speculative concern[] . . . insufficient to establish standing in a suit for damages."  Kola v. Forster & Garbus LLP, 2021 WL 4135153, at *6 (S.D.N.Y. Sept. 10, 2021); accord Lanza v. Client Servs., Inc., 2022 WL 17787465, at *5 (E.D.N.Y. Sept. 12, 2022) ("Plaintiff's allegations that the Letter caused confusion and uncertainty about her rights reflect only hypothetical, speculative concerns.").

Nor is an informational disparity that hinders an individual from taking legal action an injury with a close relationship to a harm traditionally recognized as providing a basis for lawsuit.  As the Second Circuit has held, plaintiffs alleging "informational injuries" must "show that [they have] an 'interest in using the information . . . beyond bringing [their] lawsuit.'"  Harty, 28 F.4th at 444 (citations omitted) (emphasis added).  Brathwaite has not done so here.

In the end, Brathwaite "lacks standing for [her] claims of violations of NYLL § 195(1)(a)

and § 195(3) because [she] was not concretely harmed by Defendants' statutory violation."
Hernandez v. 99 Thai Playground LLC, 2022 WL 18539303, at *7 (S.D.N.Y. Nov. 28, 2022)
(punctuation altered and citation omitted), adopted by 2023 WL 1400626 (S.D.N.Y. Jan. 31,
2023).  As a result, the Court lacks subject matter jurisdiction over the claim and thus no
damages can be awarded for it.

    D.  Liquidated Damages

    Brathwaite seeks liquidated damages for her unpaid wages.  See Compl. ¶¶ 47, 53.  N.Y.
Lab. Law § 198(1-a) allows employees to recover "an additional amount as liquidated damages
equal to one hundred percent of the total amount of the wages found to be due" unless the
employer "proves a good faith basis to believe that its underpayment of wages was in
compliance with the law."  Defendants have defaulted and therefore have not provided any
evidence to suggest that they had a good faith basis to believe their underpayment complied with
the law.  Accordingly, Brathwaite should be awarded 100% of her "unpaid earned wages."  See
Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020); accord
Cavalotti v. Daddyo's BBQ, Inc., 2018 WL 5456654, at *19 (E.D.N.Y. Sept. 8, 2018) (awarding
100% liquidated damages for "unpaid straight-time wages" and "unpaid overtime compensation"
under the NYLL).  As described in the previous section, Brathwaite is owed $3,414.65 for
unpaid minimum wages and $11,192.62 for unpaid overtime wages.  Accordingly, Brathwaite
should be awarded $14,607.27 ($3,414.65 + $11,192.62 = $14,607.27) in liquidated damages.

    E.  Prejudgment Interest

    Brathwaite seeks prejudgment interest.  See Compl. at 10; Cabrera Decl. ¶ 59-61.[4]  A
plaintiff who prevails on a NYLL-wage claim is entitled to prejudgment interest on any

---

[4] Post-judgment interest will accrue automatically pursuant to 28 U.S.C. § 1961.

"underpayment" of wages.  See N.Y. Lab. Law § 198(1-a); Santana v. Latino Express Rests.,
Inc., 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016); Castillo v. RV Transp., Inc., 2016 WL
1417848, at *3-4 (S.D.N.Y. Apr. 11, 2016).  While "a plaintiff who receives FLSA liquidated
damages may not also receive pre-judgment interest[,] . . . liquidated damages under the NYLL
are considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages
and pre-judgment interest."  Villanueva, 500 F. Supp. 3d at 243.  However, "the award of
prejudgment interest applies only to the amount of underpayment of wages, not the liquidated
damages."  Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

Prejudgment interest in New York runs at the rate of nine percent per annum.  N.Y.
C.P.L.R. § 5004(a).  The starting date from which a court computes this interest is "the earliest
ascertainable date the cause of action existed."  Conway v. Icahn & Co., Inc., 16 F.3d 504, 512
(2d Cir. 1994) (quoting N.Y. C.P.L.R. § 5001(b)).  However, "[w]here . . . damages were
incurred at various times, interest shall be computed upon each item from the date it was
incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R.
§ 5001(b); see also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York
law leaves to the discretion of the court the choice of whether to calculate prejudgment interest
based upon the date when damages were incurred or 'a single reasonable intermediate date.'")
(citing 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559, 560-61 (2d Dep't
1996)).

Here, Brathwaite's claims for unpaid wages arose on various dates between November 2,
2014, and March 15, 2020.  See Damages Chart.  As is common in cases under the NYLL, see,
e.g., Urena v. 0325 Tuta Corp., 2022 WL 4284879, at *8 (S.D.N.Y. Sept. 16, 2022), adopted by
2022 WL 17249362 (S.D.N.Y. Nov. 28, 2022), we will calculate prejudgment interest from the

midpoint date of this employment period: July 9, 2017.  Accordingly, Brathwaite is entitled to prejudgment interest on her unpaid wage damages of $14,607.27 from July 9, 2017, until the date judgment is entered.  This amounts to $3.60 per day ([$14,607.27 * 0.09] / 365 days = $3.60/day).

   F.   Attorney's Fees

   Brathwaite has prevailed on her NYLL claims and is therefore entitled to seek an award of reasonable attorney's fees.  See N.Y. Lab. Law § 663(4).

   New York law provides that

> [i]n determining reasonable compensation for an attorney, the court must consider such factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality; and the contingency or certainty of compensation.  While a hearing is not required in all circumstances, the court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered.  There must be a sufficient affidavit of services, detailing the hours reasonably expended and the prevailing hourly rate for similar legal work in the community.

Citicorp Tr. Bank, FSB v. Vidaurre, 155 A.D.3d 934, 935 (2d Dep't 2017) (citations and internal alterations omitted).

   New York courts thus use the "lodestar method" of calculating fees, "which is based on a reasonable hourly rate times a reasonable number of hours expended."  The New York Times Co. v. The City of New York Office of the Mayor, 2023 WL 5502516, at *2 (N.Y. Sup. Ct. Aug. 24, 2023); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) (In determining a statutory fee award, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.") (punctuation omitted) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Because New York cases often cite to federal case law

in addressing attorney fee applications, <u>see</u>, <u>e.g.</u>, <u>The New York Times Co.</u>, 2023 WL 5502516, at *2, we will as well.

Using the "lodestar method," Brathwaite requests $60,695.00 in fees based on the work done by Katz Melinger PLLC ("Katz Melinger").  <u>See</u> Cabrera Decl. ¶ 68.

           1.  <u>Reasonable Hours</u>

It is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983); <u>accord</u> <u>Ergin</u>, 2022 WL 1037655, at *6.  Here, Eliseo Cabrera has provided a time record for all attorneys involved in this case, <u>see</u> Exhibit 2, annexed as Ex. 2 to Cabrera Decl. (Docket #83-2) ("Billing Report"), and has sworn that the record was contemporaneously made, Cabrera Decl. ¶ 68.  When reviewing such records, courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam).  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  <u>Angamarca v. Pita Grill 7 Inc.</u>, 2012 WL 3578781, at *12 (S.D.N.Y. Aug. 2, 2012) (quoting <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992)).

If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its calculation of the presumptively reasonable fee.  <u>Hensley</u>, 461 U.S. at 434; <u>accord</u> <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 426 n.6 (2d Cir. 1999) (citations omitted); <u>Farmer v. Hyde Your Eyes Optical, Inc.</u>, 2015 WL 2250592, at *15 (S.D.N.Y. May 13, 2015).  However, as the Supreme Court noted in <u>Hensley</u>, "[t]here is no

precise rule or formula for making these determinations." 461 U.S. at 436. Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," Carey, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146). Thus, a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134.

The Billing Report and Eliseo Cabrera's declaration indicate that four individuals worked on the present litigation: Kenneth Katz, Nicole Grunfeld, Adam Sackowitz, and Eliseo Cabrera. See Cabrera Decl. ¶¶ 64-67; Billing Report. Together, they worked for 161.80 hours. See Billing Report, at 8. The time record "provide[s] detailed descriptions of the tasks completed." Mei Chun Poon v. Apple NYC Corp., 2019 WL 75674, at *11 (S.D.N.Y. Jan. 2, 2019).

While many cases seeking a default judgment require far fewer hours, this case is unusual in that the defendants were represented for a lengthy period and the case proceeded to discovery before a default was awarded. The time records of each attorney reflect reasonable hours spent on tasks advancing the litigation. Accordingly, we find the hours requested to be reasonable.

2. Reasonable Hourly Rate

In determining whether the hourly rate is reasonable, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

To determine an appropriate hourly rate, Arbor Hill directs that a court engage in the following process:

> [T]he district court, in exercising its considerable discretion, [is] to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.

522 F.3d at 190 (emphasis in original).

The "Johnson factors" are those laid out in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  These are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19).

Arbor Hill specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

Importantly, Arbor Hill held that a court must "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Id. (emphasis added). "In other words, whether the attorneys on this case properly command the rates they seek in the marketplace is not dispositive of the rate that they are to be awarded. Rather, Arbor Hill demands that we determine the cheapest hourly rate an effective attorney would have charged." Mei Chun Poon, 2019 WL 75674, at *12 (emphasis in original).

Here, work was performed by four different attorneys: Kenneth Katz, Nicole Grunfeld, Adam Sackowitz, and Eliseo Cabrera. See Cabrera Decl. ¶¶ 64-67. Brathwaite has provided some background on each attorney, which we consider in determining whether the requested rate is reasonable.

Kenneth Katz "is the founding member and managing partner of Katz Melinger." Id. ¶ 64. Katz has "substantial experience handling wage and hour matters." Id. He has been licensed to practice law for 20 years. Id. Katz seeks an hourly rate of $575.00. Id. "Courts in this District have determined that a 'fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.'" Chen v. Shanghai Café Deluxe, Inc., 2023 WL 2401376, at *15 (S.D.N.Y. Mar. 8, 2023) (quoting Pastor v. Alice Cleaners, Inc., 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017)); accord Reinoso v. Cipriani, 2019 WL 2324566, at *3 (S.D.N.Y. May 30, 2019) ("Courts in this District have determined that $250 to $450 per hour is the range of appropriate fees for attorneys with significant wage and hour litigation experience."); Pinzon v. 467 Star Deli Inc., 2023 WL 5337617, at *14 (S.D.N.Y. July 31, 2023) (finding $300 to $400 per hour reasonable), adopted by 2023 WL 5334757 (S.D.N.Y. Aug. 18,

2023); Hollis v. All Am. Bar on First, Inc., 2023 WL 4350613, at *3 n.6 (S.D.N.Y. July 5, 2023). In light of this case law, Katz should receive an hourly rate of $450.00 per hour.

Nicole Grunfeld is a partner at Katz Melinger. Cabrera Decl. ¶ 65. Grunfeld "has focused her practice on plaintiffs' employment law for more than 16 years, and currently sits on the Board of the New York chapter of the National Employment Lawyers Association." Id. Grunfeld seeks an hourly rate of $525.00. Id. With this background, Grunfeld should receive a rate at the upper limit of ranges that have been found reasonable as just stated. Thus, Grunfeld should receive an hourly rate of $450.00 per hour.

Adam Sackowitz is a senior associate at Katz Melinger. Id. ¶ 66. Sackowitz has been admitted to practice for 10 years and has "focused his practice on employment law for more than eight years." Id. Sackowitz seeks an hourly rate of $435.00. Id. As one court in this Circuit has noted, "case law has approved rates of $300 an hour for those with eight or more years' experience" in labor law cases. Hernandez v. JRPAC Inc., 2017 WL 66325, at *3 (S.D.N.Y. Jan. 6, 2017); accord Gomez v. NYHS Design Inc., 2022 WL 4284143, at *10 (S.D.N.Y. Sept. 16, 2022), adopted by 2022 WL 6175174 (S.D.N.Y. Oct. 6, 2022). Thus, Sackowitz should receive an hourly rate of $300.00 per hour.

Eliseo Cabrera is an associate at Katz Melinger. Cabrera Decl. ¶ 67. Cabrera "has focused on employment law practice for more than five years." Id. Cabrera seeks an hourly rate of $350.00. Id. Generally, "rates in excess of $225.00 per hour are reserved for FLSA litigators with more than three years' experience." Singh v. Meadow Hill Mobile Inc., 2021 WL 4312673, at *16 (S.D.N.Y. Aug. 9, 2021), adopted by 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021). Given Cabrera's experience, Cabrera should receive an hourly rate of $225.00 per hour.

Thus, attorney's fees should be awarded as follows:

| Attorney Name | Hours | Hourly Rate | Total |
|---|---|---|---|
| Kenneth Katz | 1.7 | $450.00 | $765.00 |
| Nicole Grunfeld | 20.9 | $450.00 | $9,405.00 |
| Adam Sackowitz | 0.3 | $300.00 | $90.00 |
| Eliseo Cabrera | 138.9 | $225.00 | $31,252.50 |
| **TOTAL** | | | $41,525.50 |

3. Costs

A prevailing plaintiff under NYLL is entitled to costs, which "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (citation and quotation marks omitted); accord Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012). Here, Brathwaite seeks $1,482.00 in costs consisting of a $402.00 filing fee, $285.00 for process server fees, and $795.00 for deposition fees. See Cabrera Decl. ¶ 69. Brathwaite has submitted proof of the latter two costs, see Exhibit 3, annexed as Ex. 3 to Cabrera Decl. (Docket # 83-3), and the docket sheet reflects the filing fee. Such costs are recoverable. See, e.g., Caputi-Richards, 2023 WL 2877622, at *7 (awarding costs for a filing fee and process server fees); Kliger v. Liberty Saverite Supermarket Inc., 2018 WL 4782342, at *11 (E.D.N.Y. Sept. 17, 2018) ("Courts have also allowed recovery for PACER access, postage, and legal research."), adopted as modified, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018). Accordingly, plaintiffs should be awarded $1,482.00 in costs.

\*         \*         \*

Thus, Brathwaite should receive an award as follows:

$14,607.27 for unpaid wages

$14,607.27 for liquidated damages

$41,525.50 for attorney's fees

$1,482.00 in costs

Total: $72,222.04.

In addition, plaintiff should be awarded prejudgment interest at a rate of $3.60 per day from July 9, 2017, until the date judgment is entered.

Conclusion

For the foregoing reasons, the motion for a default judgment (Docket # 74) should be granted.  Judgment should be entered against Martini Collections Inc,. Martini Collections #1 Inc., and Daoud Alchkifati a/k/a "David" in favor of the plaintiff in the amount of $72,222.04. Additionally, the judgment should include an award of prejudgment interest to be calculated by the Clerk of the Court at $3.60 per day starting from July 9, 2017, until the date judgment is entered.

Counsel for plaintiff is directed to serve this Amended Report and Recommendation on all defendants via Priority Mail (United States Postal Service) or any form of overnight delivery, and to file proof of service on the docket within 7 days.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to Judge Ho.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP

v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir.

2010).

Dated: January 14, 2025
      New York, New York



_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

26